The opinion of the court was delivered by
DeBlanc, J.
During the war — in 1864 — Daniel Mulligan sued Philip Lynch before a federal court, and caused to be sequestered, according to the marshal’s return — twelve horses, five carriages, one buggy, and *376 other movables being at the stables, at No. 99 St. Charles street, in the city of New Orleans.
The property thus sequestered was released and left in the possession of Lynch, who — to obtain its release — gave bond for six thousand dollars, with Louis Yallee and Wm. R. Bell — the defendants — as his sureties. That bond, made payable to the marshal, or his assigns, was — by the marshal — transferred to Mulligan, and the condition therein inserted is “ that, if the said Philip Lynch shall not send the above described property out of the jurisdiction of this court, thát he will not make an improper use of it, and that he will faithfully present the same, in case he should be decreed to restore the same to the said Isaac Edward Clarke, or shall satisfy such judgment as may be rendered in the suit pending, as above mentioned, then this obligation to be void, or else to remain in full force.”
Judgment was rendered against Lynch in the federal court, and— under an execution issued on that judgment — the marshal seized and sold thirteen horses, eight carriages, one buggy and harness, one spring wagon, one cow, two hearses and over one hundred coffins, cases and caskets.
The marshal seized and'sold, under the execution, more than he had sequestered ; but this — Mulligan contends — cannot avail the sureties on the release bond, because only a small fraction of the sequestered property was sold, and the sureties’ obligation was that, unless the whole of said property was returned, they would pay his judgment.
All of Lynch’s property was sold to satisfy the execution under which it was seized, and there remains due — on said judgment — a balance of $1774 39c. The present suit was brought to recover that balance and some costs from the sureties of Lynch. Their defence is :
1. That their obligation was, under the law — not to pay the judgment obtained by Mulligan — but merely to return the property which was released on bond, and
2. That such of that property which was not returned, was exclusively the horses which died and the effects which were destroyed by wear and tear, but that those horses a^d effects were replaced by others of a like value.
The Code of Practice expressly provides that “ a defendant against whom a mandate of sequestration has been obtained — except in cases of failure — may have the same set aside by executing his obligation, for whatever amount the judge may determine, as being equal to the value of the property to be left in his possession.”
C. P. 279.
“ The security thus given by defendant, when the property sequestered consists in movables, shall be responsible that he shall not send *377 away the same out of the jurisdiction of the court; that he shall not make an improper use of them ; and that he will faithfully present them, after definitive judgment, in case he should be decreed to restore the same to the plaintiff.”
In Carroll & Co. vs. Hamilton, we said: that it is the value of the property, and not the amount of the judgment alone which regulates the obligations and responsibilities of the bondsmen. The judgment may be for more or less than the amount of the bond or the value of the property. If so, no more can be recovered than the amount of the bond or value of the property in the former ease, and no more than the amount of the judgment, though less than either, in the latter case.
30 A. 523.
The condition inserted, by the marshal’s deputy, in the bond, which is the basis of Mulligan’s action, to wit: “ that the sureties shall satisfy such, judgment as may be rendered in the pending suit,” is not a condition that he could, legally, have inserted in a bond furnished to release sequestered property ; and it is now settled that — in matters of this kind —the sureties’ obligations must be construed by the law under which they are contracted.
2 L. 399. 9 R. 537. 6 A. 277.
As the amount of the bond is to be fixed with reference to the value of the property, and at an amount equal to its value, it is true — as a general rule, that, prima facie at least, the value of the property may be measured by the amount of the bond ; but — in this instance — a part of the sequestered effects were returned, and — in as much as the value of that part has not been established — we could not, if we were to hold that the sureties are liable, fix the extent of their liability.
Did Lynch violate the condition of his bond ? Did he send the sequestered effects out of the jurisdiction of the court, under whose mandate they were sequestered ? Did he make an improper use of them ? If he did, that was not shown. He sold, for $150, the buggy mentioned in the marshal’s sequestration, and — to replace it — bought a carriage for which he paid $1200 ; and — after the release — though be could have disposed, not only of the property which had been returned to him, and of that which he thereafter acquired, when the marshal came with the writ of fieri facias, he gave all he had, and more than — over three years before — the officer of the federal court had at first taken under the writ of sequestration.
The evidence leaves no doubt that Lynch replaced, by as valuable articles of property, those which he lost by the wear and tear, or otherwise. He delivered to the marshal, and the latter sold, under plaintiff’s execution, whatever was left of the sequestered effects, when the last writ was executed, and — besides—many others which he would have *378 had no difficulty in placing out of the reach of that writ. Under these circumstances, we consider — as did the district judge — that Lynch has not violated the condition of his bond, and that his sureties have incurred no responsibility.
It is, therefore, ordered, adjudged and decreed that the judgment appealed from is affirmed with costs.
Rehearing refused.